# In the United States Court of Federal Claims

Case Number 90-981C
FOR PUBLICATION
Filed: April 12, 2011

* * * * * * * * * * * * * * * * * * * * * * * * *
**C. ROBERT SUESS,** *et al.*,

      *Plaintiff*,

v.

**THE UNITED STATES**,

      *Defendant*.

* * * * * * * * * * * * * * * * * * * * * * * * *

*Winstar* case related, Theory of Restitution or Remand, Mandate Rule

---

*Don S. Wilner*, Don S. Wilner & Associates, P.C., Trout Lake, Washington, with whom were *Thomas M. Buchanan* and *Eric W. Bloom*, Winston & Strawn LLP, Washington, D.C., for Plaintiffs.

*Amanda L. Tantum*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were *Michael F. Hertz*, Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, *Kenneth M. Dintzer*, Assistant Director, and *Scott D. Austin*, Of Counsel, for Defendant.

---

**OPINION and ORDER**

---

**SMITH,** Senior Judge:

     In this shareholder derivative action, the Court previously held the Government liable for $52 million in damages to Benjamin Franklin Federal Savings and Loan Association ("Franklin") for breach of contract. The Court found that the Government provided goodwill regulatory capital to aid Franklin in acquiring two separate thrift banks; Equitable Savings and Loan ("Equitable") and Western Heritage Savings ("Western").  However, the passage of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1986) ("FIRREA") prevented Franklin from utilizing the regulatory goodwill as capital, thereby causing Franklin to become insolvent in the face of a capital shortfall of approximately $178 million.  Unable to recover from such a shortfall, Franklin was subsequently

1

placed into a Resolution Trust Corporation ("RTC") conservatorship. As a result, this Court awarded Franklin $52 million in combined damages resulting from the Equitable and Western transactions.

The United States Court of Appeals for the Federal Circuit ("Federal Circuit") vacated this Court's decision, holding that the Federal Home Loan Bank Board ("FHLBB") was not liable for damages resulting from the revocation of the regulatory goodwill provided in the Equitable transaction. *See Suess v. United States*, 535 F.3d 1348, 1368 (Fed. Cir. 2008). In arriving at its holding, the Federal Circuit found that the FHLBB lacked the intent to contractually guarantee Franklin's regulatory capital in the Equitable transaction. *See id. at 1362*. The matter was remanded to this Court to determine "what damages, if any, are necessary to compensate Franklin for its losses associated solely with the government's breach of contract associated with the Franklin-Western transaction." *Id. at 1368.*[1]

Pursuant to the Federal Circuit's decision, this Court instructed the Plaintiffs to submit supplemental briefing to articulate a damage theory in accordance with the Federal Circuit's mandate. In so doing, Plaintiffs filed an Amended Complaint and proposed two new damages theories: (1) a rescission theory, requesting damages in the amount of the alleged goodwill involved in the Western acquisition, $6.809 million. (Am. Compl. ¶¶ 53-56.); and (2) a restitution claim, seeking to "disgorge the ill-gotten benefit received [by the United States] from the contract it breached" in connection with the Western acquisition. (Am. Compl. ¶ 60.)

In response to Plaintiffs' Amended Complaint, the Government filed a Motion to Dismiss and/or for Summary Judgment. After full briefing on all motions, oral argument was held in Washington, D.C.[2] After careful consideration of all the briefs, oral arguments and for the reasons set forth below, the Court hereby **GRANTS** the Defendant's Motion to Dismiss.

## PLAINTIFFS' THEORIES OF THE CASE

According to the Plaintiffs, the Government requested that Franklin acquire Western. By merging with Western at the Government's behest, Franklin undertook a regulatory risk in exchange for certain regulatory forbearances, assured by the Government. When the Government revoked these forbearances, it breached its contract with Franklin in the Western merger. In support of this, Plaintiffs point to an Audited Financial statement from December 31, 1985 as the "key document," which lists Western assets and liabilities acquired by Franklin.

---

[1] / After remand, several motions and memoranda of law were filed. First, a Motion to Voluntarily Dismiss the Case was filed by Plaintiffs. Then a Motion to Substitute Counsel was filed. After hearings on these Motions, the Court granted the Motion to Substitute counsel for Plaintiffs and deferred its ruling on the Motion to Voluntarily Dismiss the Case.

[2] / After hearing oral argument on the Government's Motion to Dismiss and/or for Summary Judgment, Plaintiffs filed yet another motion, a Motion for Summary Judgment. No new arguments were raised in this motion. In accordance with the Court's ruling on the Government's Motion to Dismiss, Plaintiffs' Motion for Summary Judgment is **DENIED AS MOOT**.

(Prelim. Mem. in Support of Damages at 2.)  In the valuation process of the transaction, the fair value of Western's assets and liabilities were compared against the book value of the asset or liability acquired by Franklin.  To account for the difference between the two values, the FHLBB granted Franklin $6.809 million in goodwill to represent the "excess cost over fair value of net assets acquired."  (Prelim. Mem. in Support of Damages Ex. D.)  This $6.809 million was to be amortized over a period not exceeding 25 years. (Prelim. Mem. in Support of Damages Ex. D.)

The Plaintiffs further contend that after the enactment of FIRREA, but before Franklin's seizure, the bank submitted a capital plan to the FDIC, pursuant to FHLBB's instructions, on January 8, 1990.  The plan was intended to demonstrate a path toward capital viability.  However, Plaintiffs argue that the FDIC did not even fully consider Franklin's plan before rejecting it. (Prelim. Mem. in Support of Damages at 4.)  Instead, the Government revoked the $6.809 million in goodwill, an asset that purportedly might have made a difference in Franklin's viability. (Prelim. Mem. In Support of Damages at 4.)  Plaintiffs, therefore, demand judgment in this amount to be distributed to the shareholders.

Additionally, Plaintiffs advance a theory of rescission or restitution, which Plaintiffs define as undoing the transaction and putting the parties back in the position they were before the Government's final breach of contract.  (Prelim. Mem. in Support of Damages at 1.)  With this theory, Plaintiffs assert that the case cannot be dismissed summarily or for lack of jurisdiction but instead must proceed with limited discovery and possible trial.

## THE MANDATE RULE PRECULES PLAINTIFFS' DAMAGES THEORIES

The law is clear in this Circuit that a party is barred from raising an issue on remand that, while "clearly implicated in the initial decision of the district court," was not raised on appeal. *Tronzo v. Biomet, Inc*, 236 F.3d 1342, 1349 (Fed. Cir. 2001).  Under the "mandate rule," an issue that was within the scope of the trial courts' initial judgment is necessarily incorporated within the scope of the court of appeals' mandate.  *Id*. at 1348.  Although various courts identify the doctrine by differing monikers (e.g. "waiver" and "law of the case"), in this Circuit it is "best labeled and treated as an application of the mandate rule." *Id*. at 1348 n.1.  Thus, the effect is simple, once the trial court addresses a contested issue, the issue is ripe for challenge on appeal.  If a party then fails to challenge the contested issue on appeal, the appellate court's mandate acts to preclude the party from raising that issue on remand.  *Id.* at 1348-549.

Similarly, under the doctrine of law of the case, which is corollary to the mandate rule, if a party fails to raise an issue on appeal that was decided by the trial court, the trial court's finding on that issue becomes the law of the case.  *Suel v. Sec'y, Health & Human Servs*., 192 F.3d 981, 984 (Fed. Cir. 1999); *see also United States v. Polland*, 56 F.3d 776, 779 (7th Cir. 1995).  "Law of the case is a judicially create doctrine, the purpose of which is to prevent relitigation of issues that have been decided."  *Suel*, 192 F.3d at 984.  The mandate rule and law of the case, therefore, prohibit the Court from revisiting that same issue on remand.

Here on remand, Plaintiffs advance the theory of restitution or rescission of the Government's savings related to the Western acquisition.  However, the Court has already

3

rejected this claim. Specifically, at the damages trial, Plaintiffs sought "restitution in the form of the benefit conferred on the government by entering the contracts" or Plaintiffs' costs as they do now in Counts I through IV. *See Suess v. United States*, 522 Fed. Cl. 221, 224, 229 (2002) ("Suess III"). Given that the Plaintiffs did not challenge this Court's decision on their restitution claims on appeal, the Court's rejection of these theories was incorporated into the Federal Circuit's mandate and thus, became the law of the case. Therefore, the Court is precluded from entertaining the Plaintiffs' proposed theory of recovery under restitution.

In support of its position that the rescission claim may go forward, Plaintiffs direct the Court's attention to its original Complaint, stating, "[i]n the original Complaint in this case, the Second Claim for Relief is for the 'Rescission of purchase of Western Heritage.'" (Am. Compl. ¶¶ 66-70.) However, it has been held that a litigant must describe all its theories of defense or recovery during the pretrial conference, in its pretrial briefing or they will be waived. After surveying the record, it is clear to the Court that Plaintiffs have waived their rescission claim by not deciding to include it in their pre-trial filings or present evidence at trial on this claim. (*See* Pls' App. G Filings at 21-29 ((Nov, 2, 1998)) (Pls' Pretrial Brief (Dec. 9, 1998).) Moreover, Plaintiffs neither presented this claim at trial, nor any other stage of the proceedings. It stands to reason that the Court did not address this issue because the Plaintiffs did not raise the issue, thereby, waiving it. By not raising this issue, the Defendant has a right to believe that the claim was waived and to allow Plaintiffs to raise the claim after trial would be manifestly unfair. Because the Court holds that the rescission claim was waived, this waiver was within the scope of the Court's initial judgment, under the mandate rule, and may not be revisited.

## PLAINTIFF'S COLLATERAL ARGUMENTS MUST FAIL

Plaintiffs further allege that the Office of Thrift Supervision ("OTS") improperly failed to consider their capital plan. (Am. Compl. ¶ 66.) However, this was previously argued and introduced at trial and rejected by this Court in its damages decision. *See Suess III*, 52 Fed. Cl. at 227-28. Plaintiffs did not appeal this conclusion and thus, it is precluded as well under the mandate rule. With regard to Plaintiffs allegation that the Government had "unclean hands" the Court notes that this is a defense based in equity, not a basis for a claim. To be clear, it is a basis for denying a claim when the party who is seeking equity has actually caused their own problem or had done something to cause their own problem. Thus, this claim must fail.

Lastly, Plaintiffs allege that its restitution claim should be measured by net liabilities. This must be rejected in light of the Federal Circuit's holding in *Glendale* and the mandate rule. *See Glendale Fed. Bank v. United States,* 239 F.3d 1374 (Fed. Cir. 2001). This Court rejected the argument in *Suess III* stating Glendale "bars the Court from using the market value of the assumed liabilities as the baseline for determining restitution." *Suess III*, 52 Fed. Cl. at 229.

## **CONCLUSION**

For the reasons set forth above, the Court hereby **GRANTS** Defendant's Motion to Dismiss or in the alternative for Summary Judgment. The Clerk is directed to **DISMISS** this matter and enter final judgment accordingly.

**It is so ORDERED.**

s/ Loren A. Smith
LOREN A. SMITH,
Senior Judge
